**MID-CONTINENT PIPE LINE CO. et al. v. HARGRAVE.**

No. 2415.

Circuit Court of Appeals, Tenth Circuit.

March 24, 1942.

Rehearing Denied July 14, 1942.

656

I. L. Lockewitz and C. A. Kothe, both of Tulsa, Okl. (J. C. Denton, R. H. Wills,

J. H. Crocker, and J. P. Greve, all of Tulsa, Okl., on the brief), for appellants.

H. W. Carver, of Wewoka, Okl. (Geo. C. Crump, of Wewoka, Okl., on the brief), for appellee.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

Hubert Hargrave, as agent for fifty-six named persons, instituted this action in the district court of Seminole County, Oklahoma, against Mid-Continent Petroleum Corporation, herein called the petroleum company, and Cosden Pipe Line Company, now Mid-Continent Pipe Line Company, herein called the pipe line company, to recover overtime compensation, liquidated damages, and attorneys' fees, under the provisions of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. §§ 201–219. The cause was removed to the United States Court for Eastern Oklahoma and there tried without a jury; three of the persons disclaimed during the trial; findings of fact and conclusions of law were made in which it was found and concluded that forty-four of the claimants were entitled to overtime compensation and liquidated damages in respective specified sums, and that attorneys' fees in the lump sum of $750 should be allowed. Judgment was rendered in favor of plaintiff for $1,295.92, the aggregate amount of the overtime compensation and liquidated damages, and for the attorneys' fees. Both companies appealed.

It is contended that the services rendered were of such nature that the claimants are not entitled to any of the benefits of the Fair Labor Standards Act. The petroleum company was engaged in the business of producing, refining and marketing oil and gas products. It owned oil wells in Seminole County, and it owned and operated a refinery at Tulsa. Its refined products consisted of gasoline, lubricating oil, naphtha, kerosene, distillate, road oil, asphalt, wax and grease. These products were sold to jobbers, dealers and consumers; and a large part of them were shipped into twelve or fourteen other states. The pipe line company was a common carrier of crude oil by pipe line, it transported oil for the petroleum company from Seminole County to the refinery, and it transported oil for others, all in Oklahoma. A strike was in progress and violence to the properties of both companies was being committed or threatened. About four hundred persons including the claimants were employed as watchmen to guard the wells, pipe lines, and other property and equipment against depredation, injury or destruction. Section 3(b) of the act defines "commerce" to mean trade, commerce, transportation, transmission, or communication among the several states or from any state to any place outside thereof; and section 3(j) defines "produced" to mean produced, manufactured, mined, handled, or in any other manner worked on in any state, and provides that for the purposes of the act an employee shall be deemed to have engaged in the production of goods if he was employed in producing manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any state. It is manifest that the act specifically requires that in order for an employee to come within its provisions, the nature of his services must be such that he is engaged in commerce or in the production of goods for commerce. Fleming v. A. B. Kirschbaum Co., 3 Cir., 124 F.2d 567. But in order to be engaged in the production of goods for commerce, it is not requisite that he come in actual, physical contact with the goods produced. It suffices if his services are useful and essential in a process or occupation necessary to the production of goods for commerce. Fleming v. A. B. Kirschbaum Co., supra; Fleming v. Arsenal Building Corporation, 2 Cir., 125 F.2d 278, certiorari granted 62 S.Ct. 801, 86 L.Ed. ——.

Here the petroleum company was clearly engaged in interstate commerce, and injury or destruction of the wells, pipe lines, and other property and equipment would have impeded, hindered and perhaps destroyed that commerce. The services of the watchmen to protect the property were deemed to be and were essential to the production of the goods for commerce along with the services of the employee who operated the pump, the employee who operated the booster station, the employee who repaired the machinery, and the employee who operated the gadgets which refined the crude oil into gasoline, lubricating oil, or kerosene. The claimants were engaged in the production of goods for commerce within the meaning of the act. Fleming v. A. B. Kirschbaum Co., supra; Cf. Fleming v. Arsenal Building Corporation, supra.

■ Next it is urged with emphasis that under no theory are the watchmen employed by the pipe line company entitled to claim benefits under the act for the reason that the business of that company was solely and exclusively the transportation of crude oil in intrastate commerce. Manifestly it was contemplated from the outset that the crude oil produced from the wells of the petroleum company in Seminole County would be transported by the pipe line company from the wells to the refinery, that it would be there processed, and that much of the refined products would then be shipped in interstate commerce to jobbers, dealers, and consumers. The stop at the refinery was not intended as the end of the journey, but merely as an interruption for the purpose of being processed into the refined products. And the transportation of the crude oil in the pipe lines was an essential incident or part in the preparation of the goods for commerce. It seems clear that the watchmen who guarded the pipe lines and other property of the pipe line company used in connection with the transportation of such crude oil for that purpose were engaged in the preparation of goods for commerce, as defined in the act.

■■ It is further contended that since the contracts pursuant to which the several watchmen were employed specified a wage in excess of the minimum provided by the act, and since such wage was established prior to the employment of the watchmen and was accepted by them, the claimants are not entitled to further compensation. The basis of the employment at the start was $5 per day of twelve hours, and seven days per week. The hours were later reduced to eight but the compensation per day and the days per week continued without change. Section 6 of the act provides that every employer shall pay to each of his employees engaged in commerce or in the production of goods for commerce not less than 25 cents per hour during the first year from the effective date of the section, not less than 30 cents per hour during the next six years, and not less than 40 cents per hour after the expiration of seven years from such date; and section 7 provides that a workweek shall not exceed forty-four hours during the first year after the effective date of the act, shall not exceed forty-two hours during the next year, and shall not exceed forty hours after the expiration of the second year, and that compensation for overtime shall be not less than one and one-half times the regular rate. The act applies and exacts in mandatory terms the payment of minimum wages and overtime compensation computed on the basis of sections 6 and 7, even where the contract of employment calls for compensation in excess of the minimum wages prescribed in the act. Bumpus v. Continental Baking Co., 6 Cir., 124 F.2d 549; William H. Missel v. Overnight Motor Transportation Company, Inc., 4 Cir., 126 F.2d 98.

■ The judgment is attacked on the additional ground that there was no evidence which showed that during the period of the employment of these watchmen any of the oil produced and refined by the petroleum company moved or was intended to be moved in interstate commerce. No evidence was submitted affirmatively showing that on the very days these employees worked as watchmen any of the oil produced and refined by the petroleum company actually moved in interstate commerce. But there was evidence showing generally that the petroleum company was engaged in the business of producing crude petroleum, refining it, and selling and shipping a large part of the refined products in interstate commerce. And there was no suggestion in the course of cross-examination or otherwise that any cessation or change occurred during the period in question. The evidence was abundantly sufficient to establish a prima facie showing that the oil produced and refined during such period moved or was intended to be moved in interstate commerce.

■ Next comes the contention that since it was established by the evidence that the two companies were separate and distinct corporate entities and that each acted separately from the other in respect to the employment of the watchmen, the joint judgment resulted in an unwarranted increase in the amount of the recovery. The court found in substance that the two companies were acting jointly when any of the claimants were said to have been employed for a time by one of the companies during the period in question and for a time by the other. The companies acted separately in issuing checks in payment of the wages of the claimants. But there was testimony that both companies employed a single person to hire the watchmen, that he worked for both in employing them, that they were employed to guard the properties of both, that they

worked part of the time under the employ of one and part under the employ of the other, and that sometimes they worked for both at the same time. The evidence and the fair inferences to be drawn from it support the finding. It therefore must stand on appeal. Rule of Civil Procedure 52(a), 28 U.S.C.A. following section 723c. And certainly if the two companies acted jointly in the premises a joint judgment against them was warranted.

■ The award of attorneys' fees is challenged on the ground of being excessive. While the aggregate sum sought for overtime compensation and liquidated damages was not large, there were more than fifty separate claimants and most of them recovered. Plaintiff moved to remand the action, and the companies moved to dismiss it on jurisdictional grounds. In addition to the time consumed in the trial, the attorneys for the claimants prepared and presented to the trial court two written briefs, one in opposition to the motion to dismiss and the other on the merits; and at the time of fixing the amount of the fees it seemed fairly apparent to the court that an appeal would be taken which would require the attorneys to brief and argue the case in this court, and they have done so. In view of all the facts and circumstances, the amount awarded cannot be regarded as objectionably excessive.

■ The final contention is that plaintiff was not the real party in interest, that the action was not maintainable in his name in the state court, and that on removal to the United States Court it could not be maintained in that manner. The several claimants signed a written instrument in which it was recited that they employed plaintiff to represent them in the collection of the overtime from the two companies, gave him authority to represent them in or out of court, and appointed him as their agent. Section 16(b) of the act, supra, provides inter alia that an action for the recovery of overtime compensation and liquidated damages may be maintained in any court of competent jurisdiction in the name of the employee or employees in interest or in the name of a designated agent; and Title 12, section 223, Oklahoma Statutes 1941, provides inter alia that a person expressly authorized by statute may bring an action without joining with him the person for which benefit it is prosecuted. State and federal courts are vested with concurrent jurisdiction of suits of a civil nature arising under the laws of the United States, except where Congress has expressly limited jurisdiction to the federal courts. In the absence of such an express limitation, a state court of general jurisdiction will enforce a right of civil recovery arising under an act of Congress and susceptible of adjudication conformably to the prevailing rules of procedure. Grubb v. Public Utilities Commisssion of Ohio, 281 U.S. 470, 50 S.Ct. 374, 74 L.Ed. 972. Instead of Congress limiting to the federal courts jurisdiction of an action for the recovery of overtime compensation and liquidated damages under the act, it expressly provided that such an action may be maintained in any court of competent jurisdiction. And the district courts in Oklahoma are courts of general jurisdiction. Section 16(b), supra, and Title 12, section 223, supra, construed together, clearly authorized the maintenance of the action in the state court in the name of the agent, and it was likewise maintainable in that manner after removal.

The judgment is affirmed.

HUXMAN, Circuit Judge (dissenting).

Congress, in the exercise of its sound discretion, imposed stringent penalties for the violation of the Fair Labor Standards Act, 29 U.S.C.A. §§ 201–219. The penalties provided in the Act are severe—so severe that in many instances employers hesitate to assert rights in court which they honestly feel they have, because of the penalties they suffer if they are mistaken and the judgment goes against them. This should be kept in mind in the administration of the Act. Excessive and burdensome attorneys' fees should not be added to the mandatory penalties of the Act where a claim is resisted honestly and in good faith by an employer.

This case does not present a flagrant or intentional violation of the Act. It had just been passed. It was questionable whether watchmen fell within its provisions. There were no decisions by courts for the guidance of the employers. Since then the courts have not been able to agree themselves whether the Act applies to watchmen. Appellants paid more than the minimum wage provided in the Act for the total number of hours worked. It cannot be said that appellants acted in bad faith.

All the appellants owed was $660.25. For services rendered in collecting this amount, the attorneys were allowed a fee of $750. They got more than the clients did. To me it appears conclusively that such an allowance is excessive.

Neither am I impressed with the showing as to the enormous amount of work that was done in the case. True, there were more than fifty claimants, but the amount due them was not in dispute. The books of appellants accurately reflected the time they had worked and the amount paid them. There is no evidence that appellants concealed these facts or refused to make them available to plaintiffs. A complete summary could have been prepared by appellants' bookkeeping department within a few hours. There is no evidence that this was not done.

Neither was the case particularly complicated. In fixing the fee, the court took into consideration the fact that an appeal might be taken. This, in my opinion, it had no right to do. If it could consider that, why not take into account the possibility of an application for certiorari and the further possibility that it might be granted?

When all is said, the case presented the one question, whether the Act applied to these watchmen. If it did, there was admittedly due them the sum of $660.25. The question was a close one. Appellants, acting in good faith, asked the court to determine the question. Because, in good faith, they guessed wrong, they are compelled to pay the $660.25 due, a like amount as a penalty, and, on top of all, $750 attorneys' fees, and also the costs of the action. In short, they are compelled to pay $2,075.50 and the court costs in settlement of a claim of $660.25, because they honestly thought the Act did not apply. If such penalties are to be inflicted, employers may well hesitate before they challenge any demands made upon them, no matter how ill founded. The payment of this judgment will not be a burden on these appellants, but that is beside the point. In my view, $350 would have been adequate compensation for the legal services rendered.

For these reasons I am compelled respectfully to dissent from that part of the judgment of the court approving the allowance of attorneys' fees.

### On Petition for Rehearing.

BRATTON, Circuit Judge.

The companies now contend that under Walling v. A. H. Belo Corporation, 62 S. Ct. 1223, 86 L.Ed. ——, the contracts of employment involved in this case fulfilled all of the requirements of the Fair Labor Standards Act, and that the employees are not entitled to recover for overtime compensation. In the Belo case the amounts paid the employees exceeded the minimum provided in the act, and it was expressly agreed by the employer and the employees that such sums should constitute both basic pay and overtime compensation. In other words, it was mutually agreed in effect that the amounts paid should be divided into two parts—basic pay and overtime pay. And the court held that the agreement cut off the right to recover any additional sum under the act.

Here certain representatives and employees of the companies agreed among themselves prior to the employment of any watchmen that the $5 per day should cover both straight time and overtime; that part of it should be allocated to straight time and part to overtime. But the companies and the watchmen did not enter into any such agreement. The matter was never mentioned between them, directly or indirectly. There was no mutual understanding that any part of the amount paid should be allocated to or treated as overtime compensation.

The petition for rehearing is denied.