Action by employee against employer to recover balance alleged to be due for minimum wage, overtime pay, liquidated damages, and attorney's fee, under the provisions of Fair Labor Standards Act of 1938. 52 Stat. 1060, §§ 1 to 19,29 U.S.C.A. §§ 201 to 219, inclusive. The employer, appellant, challenged the complaint by demurrer, on the ground that it presents no cause of action under said act.
The averments of the complaint pertinent to this inquiry appear in paragraphs 2 and 3, found in the report of the case.
The insistence is, in effect, that the complaint discloses plaintiff's employment was that of a night-watchman at the plant of his employer, who was engaged in the production of lumber and building materials for interstate commerce; and that such night-watchman is not engaged in the actual production of goods, nor in an "occupation necessary to the production thereof," within the meaning of section 3(j),29 U.S.C.A. § 203(j). Since the Fair Labor Standards Act became effective, October 1, 1938, several courts, State and Federal, have construed the act as applied to "watchmen" or "night-watchmen," under varied states of fact.
On June 1, 1942, since briefs were filed in this appeal, the Supreme Court of the United States has dealt with the subject. Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 1118,86 L.Ed. 1638. In that case the owner of a building, known as a loft building, leased or rented same to sundry tenants who were engaged in the manufacture or production of goods for interstate commerce. The lessor, in keeping with his obligations to his tenants, had employees of different kinds, among them watchmen, of whom it was merely said: "The watchmen protect the buildings from fire and theft."
These watchmen, it will be noted, were not employees of the tenants actually producing *Page 424 
the goods for commerce, but one degree removed, namely, employees of the lessor of the buildings housing the manufacturing operations.
Following a general discussion of the power of Congress under the commerce clause, and the term "necessary," viewed in the light of the purposes of the act, the court concludes: "In our judgment, the work of the employees in these cases had such a close and immediate tie with the process of production for commerce, and was therefore so much an essential part of it, that the employees are to be regarded as engaged in an occupation 'necessary to the production of goods for commerce'. What was said about a related problem is not inappositive here: 'Whatever terminology is used, the criterion is necessarily one of degree and must be so defined. This does not satisfy those who seek for mathematical or rigid formulas. But such formulas are not provided by the great concepts of the Constitution such as "interstate commerce," "due process," "equal protection". In maintaining the balance of the constitutional grants and limitations, it is inevitable that we should define their applications in the gradual process of inclusion and exclusion. There is thus no point in the instant case in a demand for the drawing of a mathematical line. And what is reasonably clear in a particular application is not to be over-borne by the simple and familiar dialectic of suggesting doubtful and extreme cases.' Santa Cruz Fruit Packing Co. v. National Labor Relations Board, 303 U.S. 453, 467, 58 S.Ct. 656, 660,82 L.Ed. 954. 'What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of problems of causation.' Gully v. First Nat. Bank, 299 U.S. 109, 117,57 S.Ct. 96, 100, 81 L.Ed. 70."
This authority becomes the law of this court. Our task is to determine its application to the case in hand.
Accordingly, we hold that a night-watchman, employed to perform, and engaged in performing, the duties of a night-watchman at a lumber manufacturing plant, producing and processing lumber for interstate commerce as alleged in the complaint, is an employee within the protection of the wage and hour provision of the Fair Labor Standards Act. The additional or incidental services mentioned in the complaint need not be considered separately or cumulatively as affecting the sufficiency of the complaint. The demurrer was overruled without error. It follows the affirmative charge was not due defendant on the legal proposition that a night-watchman is not within the coverage of the act. The same applies to other refused charges based on the same conception of the law. Plaintiff's evidence tended to show his employment as night-watchman and his engaging in such employment with incidental services as charged in the complaint; that for a time after his employment he was furnished and operated a night-watchman's clock, patrolled the grounds, carried a gun and flash-light, excluded intruders, protected the plant, which included a sawmill, log yard, planing mill and lumber-yard, from fire, theft or other injury.
Without further comment, we find the affirmative charge, based on a want of evidence to sustain the complaint, was properly refused.
Defendant denied that plaintiff was an employee at all, claimed he was only a pensioner, drawing a stipend without any duties as an employee, and performed no duties as a night-watchman with the knowledge and approval of the management.
This was the main issue of fact in the case, Defendant insists, if not due the affirmative charge on this issue, a new trial should have been granted on the ground that the verdict did not respond to the great weight of the evidence.
As a background for the inquiry, we think the following does clearly appear:
Plaintiff was a cripple all his life. He had been night-watchman at this plant for a great many years down to the time defendant took over in July, 1938. He continued in this service for defendant until early in September, 1938, living in a little house built for him on the premises by Mr. Crotwell, a former owner and operator of the plant. He was discharged about September 7, 1938, removed from the premises, and found lodging in an old shed on a neighboring lumber-yard. Mrs. Crotwell, the widow of his old employer, intervened in plaintiff's behalf. About October 24, 1938, plaintiff was permitted to return, given sleeping quarters in a back room of the office building until his old quarters were vacated by another occupant, then re-occupied same free of rent, *Page 425 
was paid the former sum of $8 per week, and provided water, fuel and lights. No deduction was made under unemployment compensation laws.
We think it clear, without substantial evidence to the contrary, that the superintendent, authorized to hire and fire for defendant, did advise plaintiff at the time that his stipend should be known as a pension, that plaintiff acquiesced in this, spoke of it as a pension to others; that the records were kept accordingly, his name not appearing on the pay-roll, but actually paid at the same time and place as payroll employees.
But that plaintiff was to perform no duties as night-watchman was controverted by substantial evidence.
The direct testimony of plaintiff that it was expressly stipulated his duties were to be the same as theretofore, and he did so perform, with the knowledge of the management, was corroborated by testimony of other witnesses.
The evidence was in sharp conflict on this issue. To review it in detail would serve no good purpose.
Indulging the well known presumptions in favor of the verdict of the jury, sustained by the trial judge, we are not convinced the finding of the jury was clearly and palpably wrong and unjust.
Plaintiff filed interrogatories to defendant. Before offering the answers in evidence, plaintiff moved to strike a portion of the answer to Interrogatory 25. The interrogatory, answer, and portion stricken, appear in the report of the case.
We are of opinion the portion stricken was responsive to the broad language of the interrogatory; was a permissible explanation of the occasion and conditions under which plaintiff returned, and should not have been stricken.
We cannot say that injury resulted from this ruling. All the facts touching the same matter were deposed to by the parties having knowledge of same, the parties required by law to answer the interrogatories. Mrs. Crotwell had died before the trial. This answer was not her answer. We find no reversible error here.
A reasonable attorney's fee was claimed in the complaint. Evidence was offered touching the amount of a reasonable attorney's fee, and the jury found same as a separate item in the verdict returned. The statute, § 216, provides: "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."
Appellant would construe this statute to mean that the jury shall find by their verdict the amount recoverable under other provisions of the act, make no finding as to attorney's fee, and the trial judge, by further proceeding, shall ascertain and fix the attorney's fee to be added as part of the final judgment.
We do not so construe the act. It does not appear the act intends to prescribe other and different procedure in this regard, than obtains in the jurisdiction trying the cause. The "court" as used in the act may as readily be held to mean the court having jurisdiction of the cause, as to mean the trial judge.
We do think it fitting that the amount of the fee shall be found as a special item in the verdict. This, because, the trial judge has greater discretion and duty by reason of special knowledge, in dealing with the finding of the jury on this issue, than in dealing with jury findings on other issues. We find no reversible error in the record.
Affirmed.
GARDNER, C. J., and FOSTER and LIVINGSTON, JJ., concur. *Page 426