131 P.2d 978

**ROBERTSON v. OIL WELL DRILLING CO.**

No. 4715.

Supreme Court of New Mexico.

Dec. 7, 1942.

Lee R. York, of Hobbs, for appellant.

Don G. McCormick, of Hobbs, for appellee.

MABRY, Justice.

Suit was brought by plaintiff-appellant against defendant-appellee hereinafter referred to as plaintiff and defendant respectively, for overtime pay under the Federal Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. The appeal is taken from the judgment of the trial court sustaining a demurrer to the amend-

ed complaint. We thus have the complaint, supplemented by a stipulation, from which we get the facts in the case. It is not disputed that the oils produced from the wells in question move in interstate commerce. Defendant contends that we must look to the service performed by the employee, himself, in determining whether he is covered by the act; that simply because the defendant is principally engaged in interstate commerce, or in the production of goods for such, does not mean that each and all of his employees are necessarily under the act in question.

The pertinent portions of the act which we are called upon to construe, provide:

"Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates * * *." Sec. 6(a), 29 U.S.C.A. § 206(a).

"No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce. or in the production of goods for commerce * * *." Sec. 7(a), 29 U.S.C.A. § 207(a).

"'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this Act [chapter] an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State." Sec. 3(j), 29 U.S.C.A. § 203(j).

There is only one point presented and this we quote from plaintiff's brief: "Every employee working in any occupation necessary to the production of goods for commerce is engaged in interstate commerce, or in the production of goods for interstate commerce, and the plaintiff being a watchman employed by defendant engaged in the production of goods for commerce rendering services in connection with such business, is employed in interstate commerce and comes within the Act."

It is admitted that plaintiff was at all times employed as a watchman for an idle rig, most of which time, as hereinafter shown, it was employment as a watchman for a drilling rig "dismantled and stored, or stacked, at some point on or near the lease on which the particular well had been drilled." The rig is so stored, or stacked, after the completion of some particular well and while waiting to be moved to another location and used in the drilling of another well; "and such watchman services are necessary for the carrying on of said business of defendant," the complaint states. Plaintiff did no other work about the wells or upon the property than that of watchman, which work required all of his time. The defendant company operates in New Mexico and the adjoining states of Oklahoma and Texas, exploring for and producing oil and gas for interstate commerce.

It is not shown how much time usually elapsed between the completion of one well and the employment of the drilling rig upon another. The rig might, at times, be so stored for a considerable period—for weeks or even months—but the complaint and stipulation does not make this time element clear, if it should be important.

The stipulation of the parties, which is to be taken in amplification of the amended complaint to which the demurrer was directed, sets out the following facts:

1. That plaintiff over a period of two years worked as watchman for defendant on a total of 525 different days. On 497 of the days worked by the plaintiff, his duties were substantially as follows:

a. After the completion of an oil well which had been drilled by appellee for another company, the drilling equipment, generally known as the drilling rig but not including the derrick, would be dismantled and stored or stacked at some point on or near the lease on which the particular well had been drilled, which well and lease were not owned by the appellee.

b. It was the duty of appellant to act as watchman on the drilling rigs so stored and stacked and during such period said drilling rigs were not put to any use whatsoever.

2. On 25 different days, the appellant's duties were substantially as follows:

a. During the course of drilling wells under contract for other companies there were various periods during the drilling of the wells in which the operations temporarily ceased for a period of a few days for various reasons such as allowing cement to set, making geological tests, and for other reasons. During these periods, the drilling crews would not be at the well but would return later and complete it.

b. During these intervals, while the drilling rig was still assembled and over the well, but idle, it was the duty of appellant to act as watchman.

3. On 3 of the days worked by appellant, his duties were substantially as follows:

a. Appellee maintained a tool yard in Hobbs, New Mexico, to which at various times items of equipment were taken to be stored or to be worked upon.

b. It was the duty of appellant to act as watchman at the tool yard as a precaution against thieves and vandals.

The United States Supreme court in the case of Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 1121, 86 L.Ed. 1638, recently decided, with only Mr. Justice Roberts dissenting and that upon the ground that the majority opinion would make "the power of Congress * * * reach the purely local activities," gave us a standard by which to make application of the statute, in this language: "The employees in these cases had such a close and immediate tie with the process of production for commerce, and was therefore so much an essential part of it, that the employees are to be regarded as engaged

in an occupation, 'necessary to the production of goods for commerce'".

That was a case where the owners of certain buildings involved employed watchmen, porters, engineers and other workmen, who watched, serviced and maintained the buildings in which tenants of the owners of such buildings were employed in manufacturing goods for interstate commerce. Counsel for defendant calls our attention to the fact that the court there made no distinction between the various workmen and the watchmen employed in such service; and, that moreover, this being a case where goods were actually being processed and manufactured during the period that the watchmen were on duty at the buildings, we should be able to distinguish that case, somewhat, from the one at bar where the watchman's services are employed only while the instrumentality for the production of goods for such interstate commerce was temporarily unemployed for such use, and entirely at rest.

We cannot say the distinction is important. The watchman in the case at bar was essential for the protection of the machinery and equipment employed in these drilling operations, as were other workmen essential to the actual operation. Speaking to the question of the power of Congress under the Fair Labor Standards Act, Circuit Judge Mahoney, of the 1st circuit, in Bowie v. Gonzales, et al. 117 F.2d 11, 15, observed: "The power of Congress to protect interstate commerce is extremely broad. It has been expressly held that any statutory rule designed 'to prevent the flow of commerce from working harm to the people of the nation, is within the competence of Congress'. Mulford v. Smith, 307 U.S. 38, 48, 59 S.Ct. 648, 652, 83 L.Ed. 1092."

See also Mid-Continent Pipe Line Co. v. Hargrave, 10 Cir., 129 F.2d 655, recently decided. There was involved in that case the wages of watchmen who were engaged to guard producing oil wells, pipe lines and other property. It does not appear whether oil was actually moving in the pipe line at the time the services were performed, but in view of the language of the court it seems that the point would have been unimportant. This was an opinion from the 10th Circuit Court of Appeals affirming a judgment of Judge Rice of the U. S. District court of Oklahoma. 42 F.Supp. 908. We quote from the Circuit Court opinion written by Judge Bratton: "Here the [plaintiff] company was clearly engaged in interstate commerce, and injury or destruction of the wells, pipe lines, and other property and equipment would have impeded, hindered and perhaps destroyed that commerce. The services of the watchmen to protect the property were deemed to be and were essential to the production of the goods for commerce * * * within the meaning of the act. * * * It suffices if his services are useful and essential in a process or occupation necessary to the production of goods for commerce."

The case of Fleming v. A. B. Kirschbaum Co., 3 Cir., 124 F.2d 567, is cited in the opinion just mentioned. See Warren-

Bradshaw Drilling Co. v. Hall et al., 5 Cir., 124 F.2d 42; Wood v. Central Sand. & Gravel Company, D.C., 33 F.Supp. 40; S. H. Robinson & Co. v. Larue, Tenn., 156 S.W.2d 432; Atkocus v. Terker, Mun. Ct., 30 N.Y.S.2d 628; Lefevers v. General Export Iron & Metal Co., D.C., 36 F. Supp. 838, and Berger v. Clouser et al., D.C., 36 F. Supp. 168.

In the Lefevers case, [36 F. Supp. 839], supra, we find this language, the emphasis being our own: "I am of the opinion that a night watchman, performing the usual services as such, guarding and protecting goods processed or produced for shipment in commerce, while they are being processed or produced, *or thereafter while awaiting shipment in transportation,* thereby facilitates such commerce and is entitled to the benefits of the act."

Defendant cites and relies upon the U. S. District court case of Brown v. Carter Drilling Co., 38 F. Supp. 489, as being one presenting facts identical with those of the case at bar, but we believe this case is out of line with most of the recent and better reasoned authorities.

What would be said as to the application of the Act, if, while moving the dismantled rig from one job to another, the carrier broke down and a watchman were employed for a few days while plans were made to move the equipment forward to its new location? Certainly a watchman would be as essential here as the mechanic or engineer who repaired the break-down and directed the movement on to the new location.

What difference is there, except in degree, between such a case and one where the equipment must be held for a longer period in a near-by and convenient place, stacked or stored, but always subject to being called into use on some new location then being sought? We can see no controlling difference.

A watchman's duties may be just as important to the prosecution of the business as are those of the engineer who controls the power in the process of drilling. To have left this machinery unguarded during the waiting periods between jobs, and to have thereby suffered loss or damage to the whole or some vital part, would surely, in some degree, have "impeded, hindered and perhaps destroyed that commerce." Mid-Continent Pipe Line Co. v. Hargrave, supra.

If the rig were set out in storage awaiting a sale, say; if it were intended that the equipment would not be used again in the normal operations of defendant in such interstate commerce, we might then have a different question. But the demurrer is directed to no such state of facts.

The learned trial judge erred in holding that the Act in question did not apply to the plaintiff as to all periods of employment involved.

The order and judgment is reversed with directions to overrule the demurrer and proceed thereafter in a manner not inconsistent with this opinion, and it is so ordered.

BRICE, C. J., and SADLER and BICKLEY, JJ., concur.

ZINN, J., being absent, did not participate.