## SLOVER v. WATHEN et al. (SKEEN et al., Interveners).

### No. 5141.

Circuit Court of Appeals, Fourth Circuit.
Jan. 6, 1944.

Paul Berman, of Baltimore, Md. (Eugene A. Alexander, III, and Marcy M. Ehudin, both of Baltimore, Md., on the brief) for appellant.

John H. Skeen, of Baltimore, Md. (Beeuwkes, Skeen, Oppenheimer & Frank, of Baltimore, Md., on the brief), for appellees.

Joseph I. Nachman, Atty., U. S. Department of Labor, of Washington, D. C. (Douglas B. Maggs, Sol., and Bessie Margolin, Asst. Sol., both of Washington, D. C., Bennett H. Barnes, Regional Atty., of Richmond, Va., and Morton Liftin, Atty., U. S. Department of Labor, of Washington, D. C., on the brief), for Administrator of Wage and Hour Division, U. S. Department of Labor, as amicus curiae.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a final judgment of the United States District Court for the District of Maryland, dismissing the action of plaintiff-appellant (hereinafter called Slover) which was brought to recover unpaid minimum wages, overtime compensation, liquidated damages, attorneys' fees, and costs, pursuant to the provisions of § 16(b) of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq. (hereinafter called the Act). The defendants-appellees are copartners trading under the firm names of Wathen and Company (hereinafter called Wathen) and Patapsco Dry Dock Company (hereinafter called Patapsco). Patapsco was engaged in the repair of barges operated by Wathen. The undisputed testimony showed that these barges moved almost ex-

clusively in interstate commerce. Slover was hired and paid by Patapsco except for the last two months of his employment; during this period he was employed by Wathen.

Wathen and Patapsco lease a pier approximately 76 feet wide and 900 feet long in the harbor area of Baltimore City. The pier contains a small building, which serves as an office for both businesses, and several other buildings in which tools and equipment are stored. Although separate sets of books were kept for each company, a common telephone was used by both firms.

No dry dock facilities were available and the barges were repaired in the waters adjacent to the pier. The average time a barge was tied up at the pier for repairs was one month.

It is apparent from the record that Wathen and Patapsco are one and the same for all practical purposes. The owners of both companies are identical, they use a common office and pier to conduct their business, and the respective employees work interchangeably for both firms. More than 90% of Patapsco's business was repairing the barges operated by Wathen.

The District Court, stating that there was a "violent conflict" in the evidence regarding the exact nature of the work performed by Slover, concluded that the duties of Slover for which he was employed were those "of a watchman, hired to answer night telephone calls, and in a general way to guard the dock." Accordingly, the court held that Slover did not come within the Act. The complaint was dismissed and Slover has duly appealed to this Court.

In Milam v. Texas Spring & Wheel Co., 1941, 157 S.W.2d 653, the Texas Court of Civil Appeals held: "A night watchman guarding premises on which products sold in interstate commerce are manufactured and occasionally taking * * * telephone calls after business hours for the man in charge of the employer's business and reporting them to him at his residence, is 'engaged in commerce' within the federal wage and hour act."

■ We feel that this statement is applicable to the instant case. The barges operated by Wathen moved in interstate commerce and they therefore were instrumentalities of interstate commerce. Newport News S. & Dry Dock Co. v. N. L. R. B., 4 Cir., 101 F.2d 841, 843. And certainly if persons employed in the operation of

a draw bridge spanning navigable waters were engaged "in commerce", then surely Slover, a watchman of the pier to which the interstate barges were tied, was equally engaged "in commerce". Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494. Slover's work in this connection was as necessary and as indispensable to the interstate commerce of the barges as work done on railroad tracks over which interstate trains operate and work done on highways over which interstate vehicular traffic runs, are necessary and indispensable to interstate transportation by rail and road. Cf. Walling v. Patton-Tulley Transp. Co., 6 Cir., 134 F.2d 945; Walling v. Craig, D.C.Minn.1943, 53 F.Supp. 479; Pedersen v. J. F. Fitzgerald Co., 318 U.S. 740, modified 318 U.S. 742, 63 S.Ct. 558; Atkocus v. Terker, Mun.Ct.1941, 30 N.Y.S. 2d 628. Slover's activities were thus so closely related to the movement of commerce as to be a part of it within the test prescribed by the Supreme Court in McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538. We are therefore of the opinion that Slover's assigned duties (as found by the court below and admitted by Wathen and Patapsco) under his employment as a watchman in the protection of the "dock" and interstate barges while they were tied at the pier, clearly brought him within the protection of the Act. Cf. Missel v. Overnight Motor Transportation Co., 4 Cir., 126 F.2d 98, affirmed 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Burton v. Zimmerman, 4 Cir., 131 F.2d 377; Mid-Continent Pipe Line Co. v. Hargrave, 10 Cir., 129 F.2d 655; Walling v. Sondock, 5 Cir., 132 F.2d 77; Labor Interpretative Bulletin No. 11, issued July 1939, revised July 1943.

■ There is a second and perhaps even stronger reason why Slover is entitled to the protection of the Act in that he was engaged in the production of goods for commerce. The undisputed evidence shows that Patapsco was engaged exclusively in the work of repairing barges at the pier. These barges were "subjects of commerce" and were "goods" under the Act. "Working on * * * goods" is, by definition in §§ 203(i) and 203(j) "production" within the meaning of the Act.

In Bracey v. Luray, 4 Cir., 138 F.2d 8, 11, Judge Parker stated: "There can be no question, we think, but that the production of ships to operate in interstate and foreign commerce is a production for com-

merce, within the meaning of the statute." Nor can there be a valid distinction between *building* new ships and *repairing* old ships so far as the Act is concerned, since § 203(j) provides that "produced" includes "handled or in any manner worked on in any State."

Thus, in Bracey v. Luray, supra, we held that an employee engaged in handling scrap iron intended for use by a company, other than the employer, in the fabrication of ships, was engaged in the production of goods within the scope of the Act.

"We think, however, that the lower court was in error in holding that plaintiffs were not engaged in production of goods for commerce. They were engaged in handling scrap iron which was intended to be used and was used in the fabrication of ships. 'Goods' as defined in the statute includes ships 'or any part or ingredient thereof.' Sec. 203(i). And 'handling' is by express terms included in 'production.' Sec. 203(j). Plaintiffs handled scrap iron, an *ingredient* which was used in the manufacture of ships, and were therefore engaged in the production of goods within the statutory definition."

The question presented to us by the instant case is almost identical with the one that was adjudicated in the Bracey case, if we substitute the words "worked on" for the word "handling". There can be no doubt but that a barge was being "worked on" in the course of its repair. Consequently, production of goods took place within the meaning of the Act.

■ Patapsco employed carpenters and other workmen for the express purpose of repairing the barges. Patapsco's machinery and equipment, used in the repair work, were stored on the pier which Slover guarded. Slover, as night watchman for Patapsco, was also admittedly employed to safeguard the barges from fire, theft, storms, leakage or other physical damage while the barges were moored at the pier. It is therefore immaterial that Slover did none of the actual repair work. His acknowledged duties as watchman for Patapsco's premises were so closely related to Patapsco's business of repairing barges that he must be considered as being "engaged in the production of goods for commerce" within the meaning of the Act.

■ In Walling v. Sondock, 5 Cir., 132 F.2d 77, certiorari denied 318 U.S. 772, 63 S.Ct. 769, Circuit Judge Holmes ably discusses the application of the Act to watchmen. At page 78 of 132 F.2d, he states: "Whether or not the Act, 29 U.S.C.A. § 151 et seq., is applicable in a given instance depends upon the character of the duties performed by the employee; and, if the work of the employee has such close and immediate connection with the process of production for commerce as to be an essential part of it, such employee is engaged in the production of goods for commerce within the meaning of the Act. Similarly, if an employee's services are part of and contribute materially to the consummation of transactions in interstate commerce, the employee is engaged in commerce as defined by the Act. Upon these principles, those watchmen charged with the protection and preservation of the buildings and machinery used to produce goods for commerce perform duties having an essential relationship to the process of producing and distributing goods in interstate commerce."

Innumerable other cases also hold that watchmen who are employed to guard and protect property for employers engaged in the production of goods for commerce come within the provisions of the Act. See A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Mid-Continent Pipe Line Corp. v. Hargrave, 10 Cir., 129 F.2d 655; Johnson v. Phillips-Buttorff Co., 1942, 178 Tenn. 559, 160 S.W.2d 893, certiorari denied 317 U.S. 648, 63 S.Ct. 43; Wood v. Central Sand & Gravel Co., D.C., 33 F.Supp. 40; Holland, Adm'r v. Amoskeag Mach. Co., D.C., 44 F.Supp. 884; Lefevers v. General Export, Iron & Metal Co., D.C., 36 F.Supp. 838; Reeves v. Howard County Refining Co., D.C., 33 F.Supp. 90; Fleming v. Pearson Hardwood Flooring Co., D.C., 39 F. Supp. 300; Williams v. General Mills, D.C., 39 F.Supp. 849; Doyle v. Johnson Bros., 176 Misc. 656, 28 N.Y.S.2d 452; McMillan v. Wilson & Co., 212 Minn. 142, 2 N.W.2d 838; Robertson v. Oil Well Drilling Co., 47 N.M. 1, 131 P.2d 978; Acme Lumber Co. v. Shaw, 243 Ala. 421, 10 So. 2d 285. And inasmuch as the barges, after repair, were used for transportation in interstate commerce, the production was clearly for commerce as specified in the Act. It therefore follows that Slover was engaged in an "occupation necessary to the production" of goods for commerce, and he was thus within the coverage of the Act.

Wathen and Patapsco each admit that Slover was hired to act as a watchman. We hold those duties sufficient to entitle Slover to the protection of the Act. Cf. Walling v. Jacksonville Paper Co., 317 U. S. 564, 63 S.Ct. 332. It is therefore not necessary for us to consider the legal effect of Wathen's and Patapsco's acceptance of certain gratuitous functions performed by Slover beyond the requirement of his actual employment, i. e., the servicing and securing of the barges.

Since Slover was engaged both in "interstate commerce" and in the "production of goods for commerce" the judgment of the lower court dismissing his complaint must be reversed, and the case is remanded to the District Court for further proceedings consistent with this opinion.

Reversed and remanded.