JERRY SCHINECK et al., Plaintiffs, *v.* 386 FOURTH AVE. CORP.,
Defendant.

City Court of New York, Trial Term, New York County, June 12, 1944.

*Moses M. Cohen* for plaintiffs.

*Kenneth C. Newman* for defendant.

·Parella, J. The issues herein, tried without a jury, affect building service employees who sue to recover unpaid overtime compensation, together with an additional equal amount as liquidated damages, the costs of the action, and reasonable attorney's fee alleged to be due for varying periods from October 24, 1938, to April 20, 1942, under subdivision (a) of section 7 and subdivision (b) of section 16 of the Fair Labor Standards Act of 1938 [U. S. Code, tit. 29, § 207, subd. (a), and § 216, subd. (b)].

During this period defendant owned, managed, operated and controlled a building twenty stories in height, including a basement, situated at No. 386 Fourth Avenue, Borough of Manhattan, City of New York. Defendant was engaged in the business of operating said building for hire, under written leases, to tenants occupying space, and it transacted in behalf of said tenants thereof such maintenance and operation. The gross rented area of the building during varying periods in question was as high as 180,081 square feet, and as low as 164,-171 square feet. On the average thirty-three tenants occupied the premises. The tenants occupied such area as book publishers, insurance companies, research laboratory, advertisers, factors, architects, doctor's and attorney's offices, publishers, lithographers, a button, an underwear, an adding machine, and restaurant equipment concerns, a banking institution on the ground or street floor, cigar stand in lobby, and a trucking concern on a portion of the ground floor or street floor. Plaintiffs were employed by defendant to serve in said building as mechanics, elevator operators, porters, watchmen, painters and cleaners respectively. By reason of such, each

of the plaintiffs claims he is employed in commerce and in the production of goods for interstate commerce, within the meaning and intent of the Fair Labor Standards Act of 1938.

The defendant maintains that it carries on no business in said building except renting; that it had no interest in the businesses of its tenants, and that it is not engaged in commerce or in the production of goods for commerce, by reason of which its employees, the plaintiffs herein, do not come within the coverage of the Fair Labor Standards Act.

All of the alleged defenses contained in defendant's answer have been withdrawn, except the alleged general denial, and the fourth and partial defense relating to the constitutionality of the Fair Labor Standards Act under the Fifth Amendment to the Constitution of the United States. Decision was reserved upon plaintiffs' motion to strike out the latter defense. My first consideration, therefore, shall be a determination of this motion.

This question has been clearly determined by the court in the case of *Emerson* v. *Lincoln Candies, Inc.* (173 Misc. 531, 174 Misc. 353, affd. 261 App. Div. 879, affd. 287 N. Y. 577), when it held that an action of this character is not one to enforce a penalty, but one for liquidated damages, so that section 256 of the United States Judicial Code, vesting in the courts of the United States jurisdiction '' Of all suits for penalties or forfeitures incurred under the laws of the United States '' (U. S. Code, tit. 28, § 371), did not apply, and, therefore, the State courts have jurisdiction by reason of the rights given employees under subdivision (b) of section 16 of the Fair Labor Standards Act, which in substance provides that an action of this character may be instituted '' in any court of competent jurisdiction ''. Accordingly, plaintiffs' motion to strike out this fourth and partial defense is granted. (See, also, *Yunker* v. *Abbye Employment Agency*, 32 N. Y. S. 2d 715.)

Upon the trial, the nature of the business of defendant, the duties of the various plaintiffs, the relationship of those duties to the business of the various tenants, and the amounts which the respective plaintiffs were underpaid, exclusive of liquidated damages, attorney's fee, costs and interest, if otherwise entitled to the benefits of the Code, have been stipulated by the parties.

The facts are thus without dispute, the only difference between the parties being whether the plaintiffs come within the meaning and intent of the Fair Labor Standards Act of 1938 and, accordingly, are entitled to the benefits of the overtime provision of section 7 of said Act (U. S. Code, tit. 29, § 207).

The Fair Labor Standards Act of 1938 provides under sub-division (a) of section 206 of title 29 of the United States Code that " Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce " prescribed minimum wages, and under subdivision (a) of section 207, overtime compensation given to " any of his employees who is engaged in commerce or in the production of goods for commerce " where said employee works longer than the maximum hours prescribed in said Act. Subdivision (b) of section 203 of said title defines commerce in these words: " ' Commerce ' means trade, commerce, transportation, trans-mission or communication among the several States or from any State to any place outside thereof." Subdivision (j) of said section provides in part as follows: " for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State ", and sub-division (i) of said section defines " Goods " to mean " goods * * *, wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof ".

There is no dispute that prior to the recent decisions of the Supreme Court of the United States, the courts of this State held that employees of the owner of a building whose duties were confined to the operation and maintenance of said building did not come within the coverage of the Act, even though the tenants of the building were engaged in interstate commerce or in the production of goods for commerce. (See *Killingbeck* v. *Garment Center Capitol, Inc.*, 259 App. Div. 691.) However, on June 1, 1942, the Supreme Court of the United States, in the case of *Kirschbaum Co.* v. *Walling* (316 U. S. 517), held that the employees of the owners of loft buildings, such as elevator operators, firemen, engineers, printers, carpenters and car-penters' helpers, came within the coverage of the Act, where the tenants of the building were principally engaged in the production of goods for commerce.

With this concept of the provisions of the Act in mind, a read-ing of the opinion in the *Kirschbaum* case (*supra*) apparently discloses that the court based its decision on the finding that the employees in the loft building involved were included in the second class of employees referred to in said Act, namely, employees " engaged in the production of goods for commerce ".

The reasoning of the court in the *Kirschbaum* case (*supra*) seems to be that the tenants in the building were principally engaged in the production of goods for commerce; that without light, heat and power, the tenants could not engage, as they did, in the production of goods for interstate commerce. The maintenance of a safe, habitable building was indispensable in that activity. The work of the employees in those cases had such a close and immediate connection with the process of production for commerce, and was, therefore, so much an essential part of it, that the employees are to be regarded as engaged in an occupation necessary to the production of goods for commerce.

Apparently the only question left unanswered by the *Kirschbaum* case (*supra*) is — what portion or percentage of an employee's activities must be related to the production of goods for commerce in order to bring that employee within the coverage of the Act? The application of the Act does not depend upon the percentage or volume of goods moving in commerce, so long as the record is sufficient to indicate that the flow is substantial and significant, and not utterly inconsequential. This seems to be the rule. (*Berry* v. *34 Irving Place Corporation*, 52 F. Supp. 875.) In the case of *Walling* v. *Jacksonville Paper Co.* (317 U. S. 564, 572 [1943]) the question considered was whether certain employees were "engaged in commerce", upon which the court said the applicability of the Act is dependent on the character of the employee's work, and further held that "If a substantial part of an employee's activities related to goods whose movement in the channels of interstate commerce was established * * * he is covered by the Act."

The evidence indicates that some eighteen of said tenants have been regularly engaged in essential creative and co-ordinating functions of preparing books, magazines and advertising materials for publication and reproduction, and at least a half dozen of other tenants have been regularly engaged in using the building as a warehouse for the storing of vast quantities of books, underwear, buttons, lantern slides and other goods for daily shipment to customers in several States of the United States. The creative and co-ordinating functions of publishing, art work and advertising conducted by the various tenants in connection with preparing materials for publication, have in fact recently been held to come within the scope of the Act in *Walling* v. *Sun Pub. Co.* (47 F. Supp. 180, affd. 140 F. 2d 445). (See *Berry* v. *34 Irving Place Corporation, supra; Walling* v. *Allied*

*Messenger Service,* 47 F. Supp. 773; *Yunker* v. *Abbye Employment Agency,* 32 N. Y. S. 2d 715, *supra.*) Tenants engaged in storing underwear, buttons, consumers' premiums, lantern slides, and other goods in large quantities, and in assembling, carding, packing, labeling, crating and shipping such goods across State lines to their various customers, are likewise engaged in " production " within the meaning of the Act. (*Bracey* v. *Luray,* 138 F. 2d 8; *Berry* v. *34 Irving Place Corporation, supra.*)

An analysis of the work performed by the tenants indicates that approximately half of the leased space was occupied by tenants regularly and continuously engaged in " production of goods for commerce " within the meaning of the Act. Thus it seems to me, that tenants editing manuscripts, preparing advertising copy, creating art work, laying out dummy formats for books, magazines and advertisements, correcting galley proofs, stenciling magazine reports, printing premium notices, carding and boxing sets of buttons, preparing consumers' premiums for shipment, and stocking, handling, packing, labeling, wrapping, placing in cartons, and crating thousands of carded buttons, garments, books, lantern slides, and other goods for shipment daily from the building, were engaged in " production " as the Act defines the term. The fact that building service employees serving such tenants are engaged in a " process or occupation necessary to the production ", regardless of whether they physically handled or worked upon the goods turned out by the respective tenants, has been clearly established since the Supreme Court's holding in the *Kirschbaum* case (*supra*). (See, also, *Walton* v. *Southern Package Corp.,* 320 U. S. 540; *Bowie* v. *Gonzalez,* 117 F. 2d 11; *Gonzalez* v. *Bowie,* 123 F. 2d 387; *Fleming* v. *A. B. Kirschbaum Co.,* 124 F. 2d 567; *Calaf* v. *Gonzalez,* 127 F. 2d 934; *Fleming* v. *Arsenal Bldg. Corporation,* 125 F. 2d 278; *Merryfield* v. *Hoyt Shoe Corp.,* 128 F. 2d 452; *Hamlet Ice Co.* v. *Fleming,* 127 F. 2d 165; *Mid-Continent Pipe Line Co.* v. *Hargrave,* 129 F. 2d 655; *Walling* v. *Sondock,* 132 F. 2d 77.)

There must be considered finally the fact that the various tenants used the building facilities, such as the freight elevators, to acquire goods from out of State suppliers, and to distribute such goods in substantial quantities to customers beyond the borders of the State of New York. Such would constitute the start and finish of the interstate journeys of goods going from and coming to respective tenants in said premises. (*Kirschbaum* v. *Walling* (*supra*); *Walling* v. *Sondock, supra.*) Nor

should there be overlooked the use of the ground floor as a trucking terminal, where goods are received, stored, reloaded and distributed while in continuous transit between out of State mills and New York manufacturing plants. The services rendered by the plaintiffs on behalf of such tenants are clearly so closely related to the physical movement of said goods in interstate commerce as to be a part thereof, and covered by the Act as " interstate commerce ". (*Overstreet* v. *North Shore Corp.*, 318 U. S. 125 [1943]; *Slover* v. *Wathen,* 140 F. 2d 258. See, also, *Fleming* v. *Atlantic Co.*, 40 F. Supp. 654, affd. 131 F. 2d 518.)

I am of the opinion that a significant percentage of the tenants are engaged in commerce or the production of goods for commerce within the meaning of the Fair Labor Standards Act, and since each of the plaintiffs' activities is substantially and significantly related to said production, said employees are entitled to the benefits of the Act. I, therefore, find judgment in favor of each of the plaintiffs in the following amounts:

| | |
|---|---:|
| Jerry Schineck | $525.00 |
| Milo Robbins | 191.27 |
| Francis J. Greene | 73.50 |
| Joseph Coreschi | 191.27 |
| Joseph Berg | 241.29 |
| Arthur Henry Pierson | 255.17 |
| Joseph Grech | 77.06 |
| Robert Seale | 192.30 |
| Laurence Aguis | 205.34 |
| John Joseph Leahy | 191.27 |
| Michael Rapinett | 207.12 |
| John Galea | 203.13 |
| Robert Greer | 193.29 |
| Andrew Aguis | 213.35 |
| Ole Nilsen | 188.17 |
| Richard Zarafa | 128.36 |
| Barney L. Takayer | 171.64 |
| Russel Bourne | 135.89 |

In addition to the amount awarded to each of the plaintiffs for their respective unpaid overtime compensation, there shall be added as to each plaintiff an additional equal amount as liquidated damages, under the mandatory provisions of subdivision (b) of section 16 of the Act. By reason of the fact that said unpaid overtime compensation and additional equal amount, under the interpretation of the Act, are considered in the aggre-

gate as compensation under the contract implied by said Act, interest upon the total amount in the case of each plaintiff must be computed and added under the mandatory provisions of section 480 of the Civil Practice Act. There shall also be added in the case of each plaintiff an amount equal to 25% of the total amount recovered by each plaintiff, principal and interest, hereby allowed as a reasonable attorney's fee to be paid by the defendant, and one bill of costs in the action by all plaintiffs, all the items above specified to be included in the judgment against the defendant.

Submit findings of fact and conclusions of law.