KENNETH J. ECKERT, Plaintiff, v. ELMHURST CONTRACTING COMPANY, INC., Defendant.

City Court of the City of New York, Trial Term, New York County, July 10, 1945.

*Samuel D. Smoleff* for plaintiff.

*Corner, Bell, Russell & McNulty* for defendant.

BYRNES, Ch. J. The decision dated June 8, 1945 (N. Y. L. J., June 12, 1945, p. 2255, col. 3), is amended to read as follows:

The action is based upon the Fair Labor Standards Act of 1938. (U. S. Code, tit. 29, § 201 *et seq.*)

Plaintiff was employed at a naval and air base in British Guiana leased by Great Britain to the United States for a period of ninety-nine years. The question is whether that base constitutes a " possession of the United States " within the meaning of subdivision (c) of section 3 of the Fair Labor Standards Act (U. S. Code, tit. 29, § 203, subd. [c]).

The agreement between the Government of the United Kingdom of Great Britain and Northern Ireland, in consultation with the Government of Newfoundland, on the one hand, and the United States of America, on the other hand, for the leasing of naval and air bases in Newfoundland, Bermuda, Jamaica, St. Lucia, Antigua, Trinidad and British Guiana, signed March 27, 1941, (Executive Agreement Series 235; the agreement and all documents relative to the base at British Guiana are published at 55 U. S. Stat. 1560 *et seq.*), vests in the United States " all the rights, power and authority within the Leased Areas which are necessary for the establishment, use, operation and defence thereof, or appropriate for their control. * * * " (Art. I, § [1]; 55 U. S. Stat. 1560.)

It gives the United States the right " to regulate and control within the Leased Areas all communications within, to and from the areas leased * * *." (Art. I, § [2], subd. [d]; 55 U. S. Stat. 1561.)

It specifically confers the following jurisdiction upon the United States: " In any case in which — (a) a member of the United States forces, a national of the United States or a person who is not a British subject shall be charged with having committed, either within or without the Leased Areas, an offence of a military nature, punishable under the law of the United States, including, but not restricted to, treason, an offence relating to sabotage or espionage, or any other offence relating to the security and protection of United States naval and air Bases, establishments, equipment or other property or to operations of the Government of the United States in the Territory; or (b) a British subject shall be charged with having committed any such offence within a Leased Area and shall be apprehended therein; or (c) a person other than a British subject shall be charged with having committed an offence of any other nature within a Leased Area, the United States shall have the absolute right in the first instance to assume and exercise jurisdiction with respect to such offence." (Art. IV, § [1], subds. [a], [b], [c]; 55 U. S. Stat. 1562.)

It provides further: " When the United States exercises jurisdiction under this Article and the person charged is a British subject, he shall be tried by a United States court sitting in a Leased Area in the Territory." (Art. IV, § [4]; 55 U. S. Stat. 1562.)

It is not specified in the agreement that leased areas shall be part of the territory of the United States. An inference that such areas are to be so considered for some purposes may be drawn from the following negative proviso: " It is understood that a Leased Area is not a part of the territory of the United States for the purpose of coastwise shipping laws so as to exclude British vessels from trade between the United States and the Leased Areas." (Art. XI, § [4]; 55 U. S. Stat. 1565.)

I do not think it necessary to determine the extent to which the rights of the United States in leased areas are sovereign and the extent to which such rights are only proprietary. I think it must be clear that many sovereign attributes necessarily attach to the maintenance by the United States of naval and air bases. Implicit in the right to control these bases, essential to their protection by armed might, are, the possession and constant assertion of sovereign powers.

For many if not all purposes, the jurisdiction of the United States embraces these leased areas. Each base is a " possession of the United States " to be administered, for the duration

of the lease, under the laws of the United States, except where by reason of a specific reservation contained in the agreement to lease, or because otherwise agreed upon by the governments involved, those laws do not apply.

The executive agreement under which the leases were made has been recognized by Congress, which has provided appropriations for the construction and maintenance of the bases. What constitutes territory of the United States is decided by the political branches of the government. Who is the sovereign, *de jure* or *de facto,* of a territory is not a judicial but a political question, the determination of which by the legislative and executive branches of the government is binding upon the courts. (*Jones* v. *United States,* 137 U. S. 202.)

There can of course be no question about the power of Congress to make a statute applicable to American citizens even outside of the territorial jurisdiction of the United States. (Cf. *American Banana Co.* v. *United Fruit Co.,* 213 U. S. 347, 356.) There is here no question of power but of the scope of the Fair Labor Standards Act. I am of the belief that the act, like other laws of the United States, applies in these temporary possessions of the United States, and that by operating in such places an American employer does not rid himself of the obligation imposed upon him by the act.

That plaintiff was engaged in commerce within the meaning of the act is not, I think, a doubtful question. His work related to the repair and maintenance of vessels and barges used in interstate commerce and which were therefore subjects of commerce. (Cf. *Slover* v. *Wathen,* 140 F. 2d 258.)

Plaintiff's work was not of an executive nature.

It was conceded at the trial that if the act should be found applicable there is owing to plaintiff for overtime wages and liquidated damages the sum of $2,804.24. Judgment may, therefore, be entered in plaintiff's favor and against the defendant for $2,804.24, together with a counsel fee of $195.76, making a total of $3,000.

Ten days' stay of execution. Sixty days to make a case.