JOHN ASHENFORD, RESPONDENT, v. L. YUKON & SONS PRODUCE COMPANY, INC., A CORPORATION, APPELLANT.—172 S. W. (2d) 881.

Kansas City Court of Appeals. May 3, 1943.

1242

1244

*James P. Aylward, Ralph M. Russell* and *Francis M. Cook* for appellant.

*Jeter & Earhart* and *A. P. Leacy* for respondent.

1246

CAVE, J.—This is an action under the Fair Labor Standards Act of 1938, 29 U. S. C. A., secs. 201-219. The petition was in three counts; the first for unpaid minimum wages and othertime; the second for liquidated damages, and the third for attorney's fee. The cause was tried before a jury in the Circuit Court of Jackson County, re-

sulting in a verdict and judgment for plaintiff in the aggregate sum of $4000, divded as follows: $1500 on the first count, $1500 on the second count, and $1000 attorney's fee on the third count. Defendant perfected its appeal to this court.

There are seventeen assignments of error, but we will consider only those which are carried forward under points and authorities and in the argument; the others are considered abandoned. [Clay v. Owen, 338 Mo. 1061.]

Defendant (appellant) first charges that the petition failed to state a cause of action because it "failed to allege that plaintiff was an employee 'engaged in commerce, or in the production of goods for commerce', within the meaning of the 'Fair Labor Standards Act of 1938.'". A cause of action of this nature is purely statutory, and the allegations of the petition and the proof must substantially bring the plaintiff within the purview of the statute.

In brief, the first count of the petition alleged that defendant is engaged, in the State of Missouri and elsewhere, in the business of producing, handling, and transporting fruits, vegetables and agricultural produce for sale in interstate commerce; in buying, selling and transporting such fruits, vegetables and agricultural produce in interstate commerce; that defendant sells fruits, etc., at wholesale, to retailers in the State of Kansas and other states in and from the State of Missouri; that defendant is engaged in interstate commerce and for all of such purposes maintains an office and place of business in Kansas City, Jackson County, Missouri; "plaintiff further states that he was employed by the defendant in the conduct of its business as above set forth and . . . did serve defendant as night watchman and janitor of its place of business, loader and unloader of fruits, vegetables and produce moving in interstate commerce aforesaid, time keeper, operator of stove to prevent fruits, vegetables and produce from freezing, and was required to and did prepare and furnish tools and equipment used by other employees of defendant in the conduct of its business as above set forth . . . ." The petition then alleged the number of hours plaintiff was required to work each week, the amount he was paid, and what he should have been paid under the Act for such work, and that defendant had failed and refused to pay him in accordance therewith.

Defendant's answer was a general denial, coupled with the allegation that plaintiff was not an employee within the meaning of the Act, but was an independent contractor, maintaining a watchman service for various firms located on the city market of Kansas City, Missouri.

The burden of defendant's complaint against the petition is that nowhere in the petition is there an allegation that plaintiff was wholly "engaged in commerce or in the production of goods for commerce"; that the petition failed to allege what portion of plaintiff's

1248

time, if any, was employed while engaged in interstate commerce as distinguished from the time spent by plaintiff in intrastate commerce, the only allegation having to do with interstate commerce contained in the petition refers to the activities of the defendant and not the activities of the plaintiff; that there is no allegation that defendant's activities were entirely interstate; and that where plantiff's time has been engaged partly in interstate and partly in intrastate duties, it is incumbent upon him to allege and to prove what portion of time actually spent by him was in interstate and what portion in intrastate commerce.

To support its contention, the defendant cites and relies upon the following cases: Warren-Bradshaw Drilling Co. v. Hall, 63 S. Ct. 125, 87 L. Ed. 99; Ikola v. Snoqualmie Falls Lbr. Co., 121 Pac. (2d) 369; Foster v. National Biscuit Co., 31 Fed. Sup. 552; Jax Beer Company v. Redfern, 124 F. (2d) 172; Maddox v. Jones, 42 Fed. Sup. 35; and Preston v. Louis Des Cognets & Co. (Ky.), 167 S. W. (2d) 863. In brief, the general principles announced by the courts in the above cases may be clearly stated by a quotation from the Ikola case, *supra*: "Any employee seeking to recover overtime wages . . . must allege and prove that he was employed by the defendant, that he was engaged in the production of goods for commerce, or that his labor was concerned with any process or occupation necessary to the production thereof, and that he had not received compensation for overtime as provided in the Act." Or as was said in the Maddox case, *supra*, "The complaint must clearly show not only an obligation on the defendants to pay the plaintiff employee his wages, but further state a violation of Sections VI or VII of the Act." We think plaintiff's petition meets these requirements. It alleges that the defendant was engaged in interstate commerce of buying, selling and shipping produce in interstate; that he was employed by the defendant for a definite period of time and that he worked a definite number of hours each week during that time, and pleads what his duties were in connection with carrying on the business of the defendant; and that the defendant had failed and refused to pay him the wages provided for in the Act. This petition is not subject to the criticism leveled at the petition in the Preston case, *supra*, by the Supreme Court of Kentucky. In that case, the court held that the petition had pled only conclusions and not the ultimate facts which would show that the employer was engaged in interstate commerce and that the employee's duties were an integral part thereof. The contrary is true in the instant case.

It is also charged that the petition does not allege that defendant's activities were entirely interstate, and under such circumstances, plaintiff should allege and prove what portion of his time is actually spent in interstate and what portion in intrastate commerce. To support that contention, the defendant relies upon the cases of Foster

v. National Biscuit Co., and Jax Beer Co. v. Redfern, *supra*. But those cases are not subject to the very restricted interpretation given them by defendant. They do not hold that the employer must be wholly engaged in interstate commerce, or that the employee's duties must be wholly related to interstate commerce, and if not, then he must segregate the time spent on interstate from that of intrastate commerce. The Jax Beer Company case must be further discussed in connection with the evidence herein, but it is not authority for defendant's criticism of the petition.

We hold that the petition is sufficient to state a good cause of action under the Act. [Pliner v. Nesvig et al., 42 Fed. Supp. 297.]

Defendant next contends that the evidence utterly failed to prove a case under the Act. Its first contention is that there is a failure of proof that defendant was engaged in interstate commerce and that it was an employer within the meaning of the Act. At the beginning of the trial, the defendant made the following admission in the record:

"Defendant admits that it is a corporation engaged mainly in the wholesale fruit, vegetable and produce business; that it is located on the city market in the city of Kansas City, Jackson County, Missouri; that the greater part of the products handled, received and sold at wholesale by the defendant are products grown outside the State of Missouri; that defendant buys oranges which are grown in California from the California Fruit Growers Exchange located in Kansas City, Jackson County, Missouri; that at times whole carloads of oranges are bought from the California Fruit Growers Exchange by the defendant while said car is in transit from the State of California to the State of Missouri, and before it enters the State of Missouri; that defendant purchases bananas sometimes f. o. b. Kansas City, Missouri; sometimes shipboard; that when they are purchased shipboard they are purchased at New Orleans, Louisiana, by the defendant, and that defendant pays the freight upon said car of bananas from New Orleans, Louisiana, to Kansas City, Missouri; that defendant buys apples which are grown in the States of Washington and Oregon; that defendant has during the period beginning October 24, 1938, and ending April 25, 1941, purchased apples from a broker located in Kansas City, Missouri, in carload lots while the court containing said apples was in transit from the state in which they were grown to the State of Missouri, and before they had reached the State of Missouri; that defendant sells said products at wholesale to persons whose businesses are situated in the State of Iowa whose business is trucking said products from the State of Missouri to the State of Iowa; that said truckers purchase said products at defendant's place of business, load them upon their trucks and deliver them into the State of Iowa to their various customers therein located; that defendant during the period beginning October 24, 1938,

and ending April 25, 1941, has delivered fruits and vegetables at wholesale to the following points: Manhattan, Kansas, Ft. Riley, Kansas, Ft. Leavenworth, Kansas, and Kansas City, Kansas; that defendant operates under a license granted under and by virtue of provisions of Perishable Agricultural Commodities Act, and is subject to supervision of the Bureau of Agricultural Economics of the United States Department of Agriculture; that defendant at times receives orders from customers located outside the State of Missouri by telephone; that pursuant to said telephoned orders, defendant loads merchandise ordered by telephone onto a common carrier by truck to be delivered to said customer located outside the State of Missouri, and that at said times defendant extends credit to said customers located outside the State of Missouri, and after the delivery of said products, bills the customer therefor.''

Defendant cites and relies upon the cases of Jewel Tea Company v. Williams, 118 F. (2d) 202, and Ansel Higgins v, Carr Bros. Co., 87 L. Ed. 398; but the facts in those cases are unlike the admitted facts in this case. In the Jewel Tea Company case, the evidence disclosed that the merchandise was shipped from one of its plants in Illinois to its store or plant in the State of Oklahoma and became a part of its stock of goods in trade and was then sold by salesmen who operated within a certain specified and restricted territory entirely within the State of Oklahoma. They took orders from retail customers and the goods for those orders were supplied by the company store located within the State. The court held that the salesmen did not come within the Act. In the Higgins case, the produce was purchased partly within and partly without the State and delivered to the company plant and there sold, at retail, entirely within the State of Maine. The court properly held that its employees were not within the Act. In the instant case, the admission is that the defendant purchases much, if not all, of its produce from without the State of Missouri, and has it shipped to its place of business in the State and then sells a portion thereof at wholesale to customers in other states and ships the same by common carrier or sells the same to customers to be transported by such customers into other states, and that it has delivered fruits and vegetables at wholesale to various points in the State of Kansas. Our attention has not been directed to, and we do not find, any evidence of any intrastate sales by the defendant.

Pertinent parts of this Act provide: ''Sec. 206: Every employer shall pay to each of his employees who is engaged in commerce, or in the production of goods for commerce, wages at the following rates . . . .'' ''Sec. 207: No employer shall, . . . employ any of his employees who is engaged in commerce, or in the production of goods for commerce—for a work week longer than forty-four hours . . . .'' Sec. 203 provides: ''(b) Commerce means trade, commerce, transportation, transmission or communication among the several

states or from any State to any place outside thereof." "(g) 'Employ' includes to suffer or permit to work." "(j) 'Produced' means produced, manufactured, mined, handled or in any manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof in any State." "(k) 'Sale' or 'sell' includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition."

It is clear from the admission that a certain portion, if not all, of defendant's products were shipped in interstate commerce and the fact that the evidence does not make clear what proportion is interstate and what proportion is intrastate, if any, would not of itself destroy plaintiff's case. Recent decisions hold to the view that, to bring an employer within the Act, it is not necessary that the major part or even a substantial part of his shipments be interstate. [Walling v. Peoples Packing Company, 132 F. (2d) 236; Warren- Bradshaw Drilling Co. v. Hall, *supra*; Walling v. Jacksonville Paper Co., 63 S. Ct. 332, 87 L. Ed. 393; U. S. v. Darby, 312 U. S. 100, 132 A. L. R. 1430.] In the last cited case, the Supreme Court held that if the Act applies to a small producer, it must equally apply to the production for commerce of a small portion of the total production of a large producer. It is immaterial from the viewpoint of national concern in protecting interstate commerce and preventing its channels from being used to spread substandard labor conditions by competitive pressure, to the injury of that commerce, that the shipments in such commerce do not consist of the major production of the producer. In Walling v. Jacksonville Paper Company, *supra*, the court said: "The fact that all of respondent's business is not shown to have an interstate character is not important. . . . If a substantial part of an employee's activities related to goods whose movement in the channels of interstate commerce was established by the test we have described, he is covered by the Act."

We conclude under the evidence in this case that the employer is engaged in interstate commerce and comes within the Act.

Defendant next contends that the evidence failed to prove that plaintiff was an employee "engaged in commerce, or in the production of goods for commerce", within the meaning of the "Fair Labor Standards Act". Concerning his duties and obligations, the plaintiff testified in substance that he was employed by the defendant for and was required to perform the duties of a watchman about defendant's place of business from four o'clock P. M. until four o'clock A. M., seven days per week, during the time involved in this litigation, and that during such hours he was required, in addition to

acting as watchman, to prepare tools, tarpaulins, ropes, lanterns and shovels for other employees, who used them in handling defendant's merchandise, and give to the employees the orders for the merchandise to be brought from the railroad cars to the place of business, and helped unload the same from the trucks; and delivered merchandise to customers and helped load the same into their trucks, some of which was transported into the states of Kansas and Iowa; he delivered bills for merchandise sold to customers; acted as janitor in cleaning out the place of business, and kept fires in the place of business in order to prevent the merchandise from freezing. If, as we have held, the employer was engaged in interstate commerce, then certainly the duties performed by the plaintiff as above outlined brings him within the provisions of the Act. In the cases of Kirschbaum v. Walling, 316 U. S. 517, 86 L. Ed. 1638, and Arsenal Bldg. Corp. & Spear & Co., Inc. v. Walling, 62 S. Ct. 1116, the Supreme Court of the United States seems to have put this question at rest. Those cases are ones in which watchmen and porters, among others, were employed in the maintenance of loft buildings, whose tenants were principally engaged in the production of goods for interstate commerce. Regarding such employees as being within the Act because of their relationship to the activities of the tenants, the adminstrator brought suit to enjoin the petitioners, who owned the buildings, from violating the Act by paying wages at lower rates than those prescribed by the Act. The effect of the holding of the Supreme Court was that the work of such employees, that is, the maintenance of safe and habitable buildings and the protection of same from fire and theft, had such a close and immediate tie with the process of production for commerce and was so much an essential part of it, as to entitle the employees to be regarded as engaged in occupations necessary to the production of goods for commerce.

In Lefevers v. General Export Iron & Metal Co., 36 Fed. Sup. 838, the court held: "A night watchman performing the usual services as such, guarding and protecting goods processed or produced for shipment in commerce, while they are being processed or produced, or thereafter while awaiting shipment in transportation, thereby facilitates such commerce and is entitled to the benefits of the Act. I do not think that he needs necessarily actually and personally to assist in the processing and preparation of such goods. His services in guarding, caring for and protecting such commodities are as essential to the commerce as perhaps any other part played by individual workmen." This case was cited with approval in Fleming v. Arsenal Bldg. Corp., 125 F. (2d) 278, 279, which latter case was affirmed by the U. S. Supreme Court in Kirschbaum v. Walling, supra. The St. Louis Court of Appeals in an able and exhaustive opinion has decided this identical question in Niehaus v. Joseph Greenspon's Son Pipe Corp., 164 S. W. (2d) 180. [See also, Acme

Lumber Co. v. Shaw (Sup. Ct. Ala.), 10 So. (2d) 285; Robinson & Co. v. Larue (Sup. Ct. Tenn.), 156 S. W. (2d) 432.]

If, as was held by the Supreme Court in Kirschbaum v. Walling, *supra*, watchmen, janitors and elevator operators who are employed by the owner of a building to maintain and operate said building in which there are a number of tenants who are producing goods for interstate commerce, brings such employees within the Act, then certainly this plaintiff, who was employed as watchman and janitor, etc., by an employer directly engaged in interstate commerce, would bring him within the Act.

But defendant says, even if plaintiff is within the Act, nevertheless the evidence does not disclose what part of his time was given to interstate commerce and what part to intrastate commerce. The only evidence concerning defendant's business activities is contained in the admission above set out, and the only sales therein referred to are at wholesale for shipment to other states; and the question of whether produce purchased by defendant in other states and shipped to its place of business in Missouri and there unloaded and became a part of its stock in trade, would not alone be determinative of whether defendant was engaged in interstate commerce. In Walling v. Jacksonville Paper Company, *supra*, the Supreme Court said: "If a substantial part of an employee's activities related to goods whose movement in the channels of interstate commerce was established by the test we have described, *he is covered by the Act*. (Italics ours.)

We conclude a watchman is not required, and could not, separate the time he watches over goods for interstate and intrastate shipment when they are all stored in one building. We rule this contention against defendant.

Defendant contends that the court erred in refusing, upon defendant's motion, to make Winer Produce Company, and others, parties defendant in the cause. This motion was filed upon the theory, as therein set out, that the plaintiff was an independent contractor acting as a watchman for various produce firms located in Kansas City, Missouri, and that one of said firms was Winer Produce Company, which later became the Terminal Produce Company, and that it was necessary that such firm be made a party defendant in order to adjudicate all the issues involved. Defendant concedes that it is discretionary with the court as to whether any parties plaintiff or defendant may be ordered brought in, but claims that in this case the court abused its discretion. We cannot agree. If the plaintiff was an independent contractor, then he would not come under the Act. On the other hand, if he had a separate contract with Winer, and the facts and circumstances were such as to bring him and Winer both under the Act, then that would be a separate cause of action and one in which the defendant would not necessarily be interested.

1254

We are of the opinion that the trial court did not abuse its discretion in overruling the motion.

Defendant complains of error in plaintiff's instruction No. 1. The instruction is quite long and need not be set out; however, the first criticism leveled at it is that it did not specifically restrict the jury in its findings to, "*while plaintiff was actually engaged in interstate commerce or in the production of goods for commerce.*" - In other words, it is defendant's contention that the evidence disclosed that some of the work performed by plaintiff was in connection with intrastate commerce. But as we have heretofore said, the record in this case does not disclose that any of defendant's goods were sold in intrastate commerce. In its reply brief, defendant directs our attention to plaintiff's testimony to the effect, as defendant contends, that merchandise would be *sold at the place of business* to various customers, to be hauled away in trucks; but when we examine that testimony, we find it to be—"Q. What would be done with this produce after it had been stored there or placed there on the front sidewalk? A. It would be sold to customers out of town, sir. Q. They would sell this merchandise to various customers and it would be hauled away from there in trucks? A. In trucks, yes, sir." This, no doubt, relates to the produce sold to be trucked to the State of Iowa, which is specifically mentioned as a part of defendant's business in its admission above set out. Under the facts in this case, the instruction is not subject to that criticism and the cases cited and relied on by defendant are not in point, because the facts in those cases clearly showed that a substantial part of claimant's work was directly connected with intrastate commerce.

Defendant also contends that the instruction is confusing and misleading and allows the jury to render a verdict for the plaintiff on time which the evidence admittedly shows was spent by the plaintiff while employed by persons other than defendant. We do not understand from the record that it is conceded by plaintiff that a part of his time was given to some other employer. He flatly denied that. It was an issue in the case submitted to the jury and the jury's finding on that issue would be binding on us, as it is supported by substantial evidence. It is also contended that the instruction is erroneous, misleading and confusing in that it states that "under the law applicable to such employment, defendant was obligated to pay" a certain scale of wages. Defendant says that the instruction did not describe or mention the "Fair Labor Standards Act." It is true the instruction did not specifically mention said "Act", but it does require the jury to find that the defendant was at all times mentioned engaged "in the business of buying, selling, shipping and distributing fruits and vegetables in commerce between different states of the United States . . . and that plaintiff during all of said times was employed by the defendant in said business . . . ". We do

not think it is necessary for the instruction to specifically refer to the "Act", if it requires the finding of facts which bring the employer and employee within the provisions of the Act. We think this instruction does so. Instruction No. 1 is not subject to the errors leveled at it by defendant.

Defendant criticizes plaintiff's Instruction No. 2, which submitted to the jury the issue of whether plaintiff was an employee of the defendant or was an independent contractor as claimed by defendant. It defined an "employee" and an "independent contractor". Defendant says that the definition of an employee as contained in this instruction did not require that the employee be a person "engaged in commerce or in the production of goods for commerce" during the actual time for which plaintiff seeks recovery. But the instruction did require the jury to find from the evidence "that plaintiff was an employee of defendant as so defined during the periods set forth in Instruction No. 1 and that defendant is indebted to plaintiff under said instruction . . . ." Instruction No. 1 on the whole case required the jury to find that the plaintiff was performing certain detailed services for the defendant which would make him an employee engaged in commerce, and we do not believe it is necessary to repeat those facts in this instruction which did not seek to cover the entire case, but merely to define an "employee" and an "independent contractor". Furthermore, defendant's Instruction C submitted to the jury the question that plaintiff must prove by the preponderance of the evidence "that plaintiff was an employee of the defendant, engaged in interstate commerce or in the production of goods for interstate commerce during the period in question, and that plaintiff worked longer than the maximum hours for less than the minimum wages provided for in the Fair Labor Standards Act (29 U. S. C. A., sec. 201 et seq.), during said period." Thus, if plaintiff's Instruction No. 2 was not as full and complete as it should have been, nevertheless, it was concerning a defensive matter, that is, submitting the issue of whether plaintiff was an "employee" or an "independent contractor", and not undertaking to cover the whole case, any such omission as complained of here could be, and was, supplied and cured by defendant's instruction. [Barnard v. Waverly Brick & Coal Co., 189 Mo. App. 419, and Lange v. Mo. Pac. Ry. Co., 208 Mo. 458, l. c. 477.]

Defendant next complains of plaintiff's Instruction No. 3, which is as follows:

"The court instructs the jury that if you find for the plaintiff on the first count under the foregoing instruction, then you must also and in addition thereto return a verdict for the plaintiff on the second count in his petition for liquidated damages in exactly the same sum you have found for plaintiff to be entitled to on the first count, if so."

1256

The burden of defendant's complaint on this instruction is that it does not again require the jury to find all the necessary facts as they were required to do in Instruction No. 1 on count No. 1. The second count was for liquidated damages, and Section 216 (b) provides: "Any employer who violates the provisions of Sections VI or VII of this Act shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, *and in an additional equal amount as liquidated damages*". (Italics ours.) .The courts have held that the awarding of liquidated damages in an amount equal to the amount of minimum wages and overtime wages awarded is mandatory upon the court. [Missel v. Overnight Motor Transp. Co., 126 F. (2d) 98, 1. c. 110, and cases there cited; Thompson v. Daugherty, 40 Fed. Sup. 279.] We conclude that it was not necessary in this instruction to recite all the substantive facts as set out in Instruction No. 1 in order to authorize a verdict for plaintiff for the liquidated damages provided for under the Act.

Defendant next complains of Instruction No. 4 which authorized the jury to return a verdict for reasonable attorney's fee. Defendant contends that the matter of assessing attorney's fee is exclusively within the province of the court and not for the jury. Section 216 of the Act provides: "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." In support of its contention, defendant cites the two cases of Robinson v. Larue, *supra*, and Niehaus v. Greenspon's Sons Pipe Corp., *supra*. Those two cases were trials before the court, without a jury, and neither case decides the point now under consideration. In the case of Acme Lumber Co., Inc., v. Shaw, *supra*, the Supreme Court of Alabama has passed on this exact question, and is the only opinion to which our attention has been called or which we can find directly deciding that issue. It is there held, "The 'court' as used in the Act, may as readily be held to mean the court having jurisdiction of the cause, as to mean the trial judge. We think it fitting that the amount of the fee shall be found as a special item in the verdict." We conclude that is a reasonable construction of the Act and that "the court in such action" means the court and jury, if the cause is tried before a jury, and is not limited to the narrow construction of meaning "the trial judge."

The defendant next complains of Instruction No. 5 which is as follows:

"The court instructs the jury that if you find and believe from the evidence that during the period October 24, 1938, to April 25, 1941, inclusive, plaintiff was employed by defendant as set forth in Instruction No. 1, if so, and during all or any part of such period was employed concurrently by one or more other persons, firms or corpo-

rations, if so, defendant is not required to pay the minimum rate and overtime rate required under the law as defined in such instruction for all hours worked by plaintiff during the periods he was employed by the defendant and one or more others, if so, but defendant should be considered as a joint employer, if so, for such period or periods, and plaintiff is entitled to recover from defendant·its proportionate share of the wages due plaintiff, if any, taking into consideration all of the facts in evidence.''

The first complaint is that this instruction submits to the jury the issue of whether or not plaintiff was employed concurrently by one or more persons, and that such issue was no longer in the case because plaintiff's own testimony showed that he was employed by another besides the defendant. We do not agree that plaintiff's evidence proved such a situation. His contention was that the payments which were made by Winer and Saroff Commission Company were made to the defendant because Winer and Saroff were reaping some benefit by virtue of the plaintiff acting as watchman for the defendant, whose place of business was next door to Winer and Saroff. The weight of such evidence was for the jury and the trial court, not for this court.

The next contention is that if it was an issue of fact as to whether plaintiff was employed concurrently by one or more other persons, then defendant should be considered as a joint employer, is broader than the Fair Labor Standards Act because there is no provision in the Act for recovery by an employee ''engaged in commerce or in the production of goods for commerce'' from joint employers. The Act does not so specifically provide, but we think a reasonable construction of it would authorize such proceeding. In the case of Woods v. Wilkerson, 40 Fed. Sup. 131, the District Court for the Western District for the State of Louisiana, held that such a suit may be maintained, and said: ''. . . here is one American laborer and that under the Act the two concurrent salaries were to be added and the number of hours given by the laborer to both jobs as pumper are to be likewise added, and then the statute of the laborer is to be considered in view of the provisions of the Act. We cannot exclude the defense made and blind ourselves to the additional revenues of plaintiff, and thus cast the defendant.'' The Wage and Hour Bureau, in treating this subject in Bulletin 13, page 7, places a similar construction on the Act, and while their construction is not binding on us, it is of some persuasive value.

In this case, the plaintiff strenuously contended that he was employed by the defendant alone, while the defendant as strenuously contended that he was employed by others, whose places of business were immediately adjacent to that of defendant, and introduced some evidence that for a certain period of time one of such other employers paid a portion of plaintiff's weekly wage of $7. This instruction seeks to

relieve defendant from liability for any time the plaintiff worked for another employer, if the jury should find from the evidence that he did work for another employer. The dates of the payments made by Winer and Saroff and the amounts of such payments were definite and specific, and if the jury believed they were made to the plaintiff direct and for services he had rendered that firm under a contract with it, then the jury could take such amounts into consideration in arriving at its verdict; but if the jury believed plaintiff's theory that such payments by Winer and Saroff were made to the defendant, as a contribution for indirect benefits which they were receiving by virtue of plaintiff acting as watchman and he had no knowledge of why such payments were being made, then the jury need not take such payments into consideration. This instruction seeks to submit that issue of fact to the jury, and while it may not be as clear as it might have been, we do not believe it is erroneous for failing to detail the facts concerning such issue.

Defendant also contends that since the instruction directs a verdict for the plaintiff, it should have contained all the constitutive elements necessary to recovery under the Act, but since it refers to the issues submitted in Instruction No. 1, we hold that it was not necessary to repeat such matters in each and every instruction given on behalf of the plaintiff. We recently criticized such practice. [Nagel v. Thompson, trustee (not yet published).]

Defendant charges error in Instruction No. 6 because it predicates a verdict only on the finding that plaintiff is "an employee as previously defined in these instructions"; and contends that the only definition of an employee is in Instruction No. 2. Defendant is overlooking the rule that instructions must be read as a whole and when this instruction is read and considered in connection with the detailed facts set out and required to be found in Instruction No. 1, together with the definition of employee in Instruction No. 2, it is certainly sufficient. It is not necessary for plaintiff to set out in each and every instruction all the substantive facts which entitle him to recover, and especially is that true when such an instruction is treating of one particular issue or fact to be found. [Nagel v. Thompson, trustee, *supra*.] There is no merit in this contention.

For the same reason, there is no merit in defendant's criticism of Instruction No. 7, which is a burden of proof instruction.

Defendant next contends that the court erred in refusing to set aside the verdict because it was not responsive to the issues or the evidence. The burden of its criticism is that the jury returned a verdict in the round sum of $1500 and that this upon its face shows that it was not the result of calculation of an amount in dollars and cents, but was an effort to assess damages, and bases its argument upon the proposition that where an amount is capable of specific ascertainment,

a verdict for any other amount, whether greater or less, is erroneous. [Citing, Witty v. Saling, 154 S. W. 421, and Weisels-Gerhardt Real Estate Co. v. Pemberton Inv. Co., 131 S. W. 353.] These two cases, and there are many others to the same effect, simply decide the proposition that where a suit is founded upon a specific contract for a definite amount due and the contract is denied, then the plaintiff is entitled to recover the whole amount called for by the contract or nothing. That is not the situation in the instant case. There was much evidence that the plaintiff did not work the number of hours claimed; that he received pay from another employer for certain hours spent for that employer; and a conflict in the evidence as to what amount the defendant had paid plaintiff each week and as to the period when such payments were made. This is not a case where the plaintiff was entitled to all sued for or nothing, and under the evidence it could not be calculated to the exact cent. It is true, as defendant contends, that this is not a *damage* suit, but is a suit for the purpose of recovering the difference in the wages the employee actually received and what he should have received under the Fair Labor Standards Act, and where that amount is in dispute and there is substantial evidence to sustain the verdict of the jury, it will not be disturbed. [Clancy v. Reid-Ward Motor Co. (not yet published).]

Defendant's last complaint is that the court erred in refusing to set aside the verdict because it was grossly excessive. It again renews its argument that the exact time spent by the plaintiff in acting as guard and watchman for goods in interstate commerce is not, and cannot be separated from the time spent in such duties as to intrastate commerce. That same line of argument runs throughout every point made by the defendant in its brief, but we have held that there was no substantial evidence in the record to indicate that the plaintiff performed any duties on purely intrastate business; but if that were not true, under the facts in this case it would not aid defendant, because of what the court said in Walling v. Jacksonville Paper Company, *supra*.

The next criticism is that the allowance of $1000 attorney's fee is excessive. Plaintiff's attorney testified that he spent about ten days full time in discussing the facts with the plaintiff, and in research on the legal questions involved, (the Fair Labor Standards Act being rather new to the legal profession). That he spent a full week in interviewing witnesses and preparing the case for trial, and at different times conferred with his client from one to two hours per day; appeared in court on two or three occasions concerning application for change of venue and motions; three days was consumed in the trial of the case. There was other evidence that for such services a minimum fee of $1000 and a maximum fee of $1500 would be fair and reasonable. Under such circumstances, we are not dis-

1260

posed to require a *remittitur* of a portion of the fee allowed by the jury and approved by the trial court.

Finding no reversible error, the judgment should be affirmed. It is so ordered. All concur.