ARTHUR FRANZ, RESPONDENT, v. DELICO MEAT PRODUCTS COMPANY, A CORPORATION, APPELLANT.—198 S. W. (2d) 874.

Kansas City Court of Appeals. January 13, 1947.

*Moore & Aughinbaugh, Hunt C. Moore* and *William J. Carroll* for appellant.

*Calvin & Kimbrell, Walter W. Calvin* and *Bert S. Kimbrell* for respondent.

BLAND, J.—This is an action brought under the Fair Labor Standards Act U. S. C. A., Title 29, sections 201-219. The case was tried before the court, without the aid of a jury, resulting in a judgment in favor of the plaintiff. Defendant has appealed.

In the trial of the case the parties stipulated that the defendant is a corporation engaged in the production and distribution of meat and meat produce at its plant at 1121 East 12th Street, Kansas City, Missouri, where it managed, operated and controlled a wholesale and a retail department; that from its wholesale department it sold meat and meat products at wholesale, packed in boxes and barrels and distributed by train and truck to various towns and cities in Missouri, Kansas and Oklahoma and, as to such sales and distributions, defendant was engaged in interstate commerce, and all of its employees in the wholesale department, which the record shows was approximately 100 in number, were engaged in interstate commerce, and were under the Fair Labor Standards Act.

The retail market, under the evidence, including the stipulation, was operated strictly as a ''retail market'' in such a way as to constitute what is commonly known as a cash and carry market. The stipulation recites that the gross sales in the wholesale department were approximately $500,000 per year, and in the retail department approximately $40,000 per year.

The evidence shows that there were 2 to 4 persons, including plaintiff, employed in the retail department. Plaintiff was continuously employed by defendant as a butcher from October 24, 1938 to June 10, 1940. His employment was under contract between the defendant and the amalgomated meat cutters Union and A. F. L. affiliate, as were all the employees working in the retail department. The employees in the wholesale department worked under a contract with the C. I. O. These contracts were not introduced in evidence but the evidence shows that the employees in the two departments worked different hours for different rates of pay and that the employees in the wholesale department were paid time and a half for overtime.

Defendant produced no record of the hours worked by plaintiff, accounting, in part, for such failure by evidence to the effect that the time clock cards had been lost or destroyed. Some witnesses testified that the number of hours specified in the A. F. L. contract was 56 hours per week, others 57 hours.

Plaintiff testified that he worked 65 hours per week; that while he was employed in the retail department under the contract with his union he should not have done any work in the wholesale department but he was required by defendant to work in both departments; that the two departments were in the same building but in separate rooms

or quarters; that he worked 65 hours per week each and every week except those weeks including holidays, which reduced the hours for such week to 55. Plaintiff was paid $30 or $30.50 per week.

Plaintiff testified that while he worked in the quarters of the wholesale department at times a great part of his work in connection with the wholesale department was done while he was cutting and selling meat in the retail department. He testified: "Q. You had no duties to perform in the wholesale department? A. Yes, sir; I had sometimes. Q. What were they? A. Boning meat and such as that. . . . I had to go around there sometimes and bone meat after them fellows (the employees in the wholesale department) went home. THE COURT: I understand you to say that all the work you did was done in the retail department, is that right? THE WITNESS: All the steaks and all the cutting. Sometimes I had to go back and bone meat for the wholesale, when the other fellows was gone home. THE COURT: You did that on the premises where the wholesale market was located, is that right? THE WITNESS: Yes. Q. And if you did that that was for meat to be used in the retail department? A. No, sir. Q. How many times did you do that? A. I can't recall the times, that happened so often when orders came in—them boners went home at one-thirty and two o'clock and we were the only ones there. Q. At what time. A. One-thirty and two o'clock the boners went home. Q. Every day? A. Not every day, but a lot of times during the week."

He testified that all of the meat sold in the retail department came from the wholesale department "in quarters"; that he prepared "roasts and steaks . . . from the quarters." He further testified that the retail department opened at 7:30 in the morning but that he would arrive from an hour to an hour and a half before that time and start cutting meat in the retail department for use in the wholesale department. He testified that during the day orders would be sent up to him by the drivers and the other employees in the wholesale department to be filled by him and that he would cut meat in compliance with such orders and send the meat or take it back to the wholesale department where it would be taken by the drivers or shipped out. From his evidence apparently most of this meat cutting that he did for the wholesale department was done in the retail room and at moments when he was not cutting meat or waiting upon the retail trade. He testified: "I cut meat for the retail store and waited on the customers when they came in. When nobody was in there there was other work to do for the wholesale department. . . . Q. Would the customers for the retail market come in the front door? A. Yes. Q. Would they place personal, specific orders for certain meat products? A. They placed their order. Q. How would you fill the order? A. We filled the order with whatever they wanted, and they paid for their meat as they went out. . . . I think I put in

about half the time in either place, about half the time in the wholesale and about half the time in the retail. Of course, I was working in the retail and preparing meat there, and I was working in the retail, too, preparing meat at all times of the day for the wholesale. Q. Tell the Court whether or not a separate account of your time was kept there; that is, did the company separate the time you put in in the wholesale department from the time you put in in the retail department? A. No, sir, just one time; that is all. Your honor, I was charged in the retail department and I was in the retail department. I belong in that union, and that was my work in there; but I had to do any kind of work that came along.''

He further testified that he prepared meat for the wholesale, as well as the retail department, every day; that no separate record was kept of the time that he put in in the retail department in preparing meat for the wholesale department. He further testified that he had no distinct recollection as to what time he went to work on any particular day involved in this proceeding. ''Q. You are not able to tell the Court how much of your time was spent waiting on the trade and performing your duties in the retail market and how much of it was spent boning meat in the wholesale department? A. Yes, sir: I would say half of it.'' He further testified that his ''pay was charged to the retail department,'' because he was hired in that department; that, ''Also, Your Honor, when I was hired I was told that my duties were to work in the retail and also to fill the drivers' orders and the boys' orders downstairs ( wholesale department) whatever they wanted. That is what I was told when I was hired to go to work.'' There is no evidence that any other employee in the retail department did any work in or for the wholesale department or that any employee in the wholesale department did any work connected with the retail department. The two departments apparently were separate and distinct. A number of witnesses testified for the defendant to the effect that they did not, at any time, see plaintiff working in the wholesale department; that they never knew him to prepare meat for the wholesale department while in the retail department. However, these persons were officers of the defendant corporation and the employees in the office, and the court found that even if these witnesses did not actually see plaintiff working as he said their testimony was not conclusive as against plaintiff, and accepted plaintiff's statement that he did such work. The court, however, did not believe plaintiff's testimony that he worked 65 hours per week.

Plaintiff, shortly before the trial, prepared a table of computations of hours and over time and he was permitted to refer to this table in giving his testimony. In reference to this table, the court found: ''I do not believe the plaintiff worked the number of hours (65 hours per week) set out in the computation and testified to by him, because, obviously, the computations are only estimates prepared long after

the labor was performed with no written data as a basis therefor but only plaintiff's recollection, which undoubtedly would be influenced to some extent by his desire to recover as large an amount as possible, even though he may have. been attempting to be entirely fair and honest in making the computations. I believe and find from the evidence that plaintiff did work the equivalent of 57 hours each week throughout the period in question, even though there were some holidays in the period; in other words, I believe that plaintiff on some days in some weeks worked enough more than 57 hours per week to make up the time lost by holidays.''

The court found that from October 24, 1938 to October 23, 1939, plaintiff worked over time 676 hours, for which he was entitled to recover compensation at the rate of 52.63 cents per hour, plus 26.314 cents an hour and, from the period of October 24, 1939 to June 10, 1940, plaintiff worked over time 480 hours for which he was entitled to recover compensations at the rate of 53.51 cents per hour plus 26.75 cents per hour, and rendered judgment in favor of plaintiff for the total amount he earned plus a similar amount as damages, making his total recovery $1837.84. The court also awarded plaintiff the sum of $300 as a reasonable attorney's fee.

The trial court rendered judgment in favor of plaintiff on the theory that ''plaintiff worked a substantial portion of the time in question in the production of goods for commerce within the meaning of the Fair Labor Standards Act and that he is entitled to recover under said Act for hours worked in excess'' of the number of hours fixed in section 207 of the Act.

Defendant insists that the court erred in rendering judgment in favor of plaintiff for the reason that the evidence is insufficient to support a judgment in his favor without resorting to speculation and conjecture. The theory upon which the trial court decided this case, if the correct one, would render defendant's contention without merit. The trial court evidently based its judgment upon that class of cases involving an employer engaged in both interstate and intrastate business, the business being co-mingled in its operations with no attempt being made to distinquish between the two in the payment of wages. In such cases if a substantial portion of the suing employee's time was spent in that part of the business relating to interstate commerce, the employee is entitled to recover under the act without showing the amount of time he spent in the interstate as distinquished from the intrastate business of the employer. [See Guess v. Montague, 140 Fed. (2d) 500; Fleming v. A. B. Kirschbaum & Co., 124 Fed. (2d) 567; Walling v. Mutual Wholesale Food & Supply Co., 141 Fed. (2d) 331; Ashenford v. Yukon & Sons, 172 S. W. (2d) 881.] But, in the case at bar, defendant's wholesale and retail businesses were separate; the retail department being devoted to intrastate business and wholesale department to interstate business. It was, therefore, incumbent upon

plaintiff to show what portion of his time was devoted to the wholesale business of defendant and what to the retail. [Supercold Southwest. Co. v. McBride, 124 Fed. (2d) 90, 92; David v. Goodman Lbr. Co., 133 Fed. (2d) 52; Guess v. Montague, *supra*, 1. c. 504; Walling v. Supply Co., *supra*, 1. c. 339.]

In proving what portion of an employee's time was devoted to defendant's wholesale or interstate business, as distinguished from its retail or intrastate business, there must be testimony to facts amounting to more than mere guess, speculation or estimates. [Jax Beer Co. v. Redfern, 124 Fed. (2d) 172,175; McClemens Pottery Co. v. Anderson, 149 Fed. (2d) 461, 464,465; Davis v. Onyx Oils & Resins, Inc., 63 Fed. Sup. 777,778, 779; Collins v. Burton-Dixie Corp., 53 Fed. Sup. 821,823.]

It is apparent that a substantial, if not the major, part of the time that plaintiff put in in connection with the wholesale department of the defendant was while he was at work in the retail department, and at such odd moments as he was not waiting on retail trade. Not having kept any record of the time that he was cutting meat for the wholesale department, but relying solely on an estimate of such time, it is impossible to arrive at the amount of time that he devoted to the wholesale department work as distinguished from the retail department of defendant while he was working in the retail premises, to say nothing as to the time he worked in the premises of the wholesale department, without resorting to mere guess or speculation. Assuming that plaintiff's testimony is true as to his working in connection with both departments, his testimony as to the amount of work that he did in each is so uncertain and speculative as not to warrant a finding and judgment based thereon.

The judgment is reversed. All concur.